# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ANGELA S. TAFLINGER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07CV00011 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, and Michael McGaughran, Regional Chief Counsel, and Elizabeth A. Corritore, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Angela S. Taflinger filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 1381-1383(f) (West 2003 & Supp. 2007). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff applied for SSI on June 7, 2005, alleging disability beginning June 12, 2004, due to Crohn's disease. (R. at 51-58, 61-70.) The claim was denied initially on November 1, 2005 (R. at 24-28), and upon reconsideration on January 13, 2006 (R. at 34-36).

On January 20, 2006, the plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (R. at 37.) A hearing was held on June 13, 2006. (R. at 300-40.) The plaintiff, who was present and represented by counsel, testified at the hearing. (*Id.*) By decision dated September 21, 2006, the ALJ denied the plaintiff's claim for SSI. (R. at 16-21.)

The plaintiff then filed a request for review with the Social Security Administration's Appeals Council ("Appeals Council") on October 23, 2006 (R. at 11), but by a notice dated December 19, 2006, the Appeals Council denied the

-2-

plaintiff's request for review. (R. at 5-7). Thus, the ALJ's opinion constitutes the final decision of the Commissioner. The plaintiff then filed a complaint with this court objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was thirty-one years old at the time of the ALJ's decision, making her a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 416.963(c) (2007). She completed the ninth grade and has past work experience as a home health aide, a waitress, a cashier, and a ceramic molder. (R. at 303-10, 331.)

The plaintiff has a history of Crohn's disease that required her to undergo a bowel resection in 1999. (R. at 136, 195.) On May 31, 2004, the plaintiff went to the emergency room at Wythe County Community Hospital due to cramping, nausea and abdominal pain. (R. at 136-44.) When examined in the emergency room, her abdomen was found to be mildly distended with mild diffuse tenderness. (R. at 138.) She appeared to be in no acute distress. (*Id*.) The hospital's admitting report indicates that the plaintiff reported no weight changes and that her appetite and

energy levels had been normal until the recent onset of acute symptoms. (*Id*.) Her admitting diagnosis was Crohn's disease with complete small bowel obstruction. (R. at 136.) Charles A. Harris, M.D., performed a small bowel resection, and the plaintiff was discharged on June 8, 2004. (*Id*.) The discharge summary report states that "[b]ecause of the loss of her job and because she and her husband were financially strapped, [there was] discussion with the administration concerning financial aid for her medications . . . and [it was] resolved that [the plaintiff] would have to apply for disability." (*Id*.)

The plaintiff returned to Dr. Harris for a post-operative evaluation on June 16, 2004. (R. at 283.) She indicated that her appetite was good but complained of back pain. (*Id*.) Dr. Harris wrote in his notes that the plaintiff was "doing well" and recommended that she see a gastroenterologist for optimal management of her Crohn's disease. (*Id*.) He also prescribed medication for her back pain. (*Id*.)

The plaintiff was seen by a gastroenterologist Mark A. Ringold, M.D., on July 12, 2004. (R. at 148-150.) During this visit, the plaintiff denied suffering from depression, nervousness, anxiety, or panic attacks. (R. at 149.) The plaintiff's examination was generally unremarkable, and Dr. Ringold stated that the plaintiff was not in acute distress. (*See id*.) He concluded that the plaintiff's Crohn's disease had not been under good control, that her compliance was "questionable" and that her

-4-

lack of insurance had been a problem. (R. at 149-50.) He provided her samples of medications. (R. at 150.)

When the plaintiff returned to Dr. Ringold on September 30, 2004, she complained of back pain. (R. at 146-47.) In his notes, Dr. Ringold stated that while her back pain may be related to Crohn's disease, the pain was "under control." (R. at 147.) He then prescribed her Skelaxin for pain. (*Id*.)

At the request of the state agency, the plaintiff was examined by William Humphries, M.D., on September 19, 2005. (R. at 163-67.) The plaintiff told Dr. Humphries that her symptoms from Crohn's disease were intermittent abdominal pain and tightness, diarrhea, and vomiting. (R. at 163.) She also stated that, during the previous year, she had gained about fifteen pounds. (*Id*.) According to Dr. Humphries' report, the plaintiff also complained about mid- and lower-back pain that had been present for about eight months. (*Id.*)

Dr. Humphries' examination yielded primarily normal results. (*See* R. at 164-65.) The straight leg raise test was negative and her strength was within normal limits in all four extremities. (*Id*.) Additionally, he found no specific muscle wasting and no motor or sensory losses of extremities. (R. at 165.) He also indicated that she was able to get on and off the table without difficulty and that she could bear weight on each leg. (*Id*.) Dr. Humphries did find that her gait was mildly antalgic on the left

and that she ambulated with the lumbar spine flexed forward, but he reported that she was able to heel and toe walk with assistance for balance. (*Id*.) Finally, his examination revealed full joint range of motion in the upper extremities and full joint range of motion in the lower extremities with only "slightly reduced hip motion due to pain in the lumbar region." (R. at 164.)

Dr. Humphries also ordered an X ray of her lumbar spine that was conducted the same day. (R. at 168.) The X-ray report revealed "[n]o arthritic changes in the lumbar spine . . . [to] account for [the plaintiff's] symptoms." (*Id*.)

Ultimately, Dr. Humphries diagnosed the plaintiff with hypertension in addition to her known diagnosis of Crohn's disease. (R. at 165-66.) While the plaintiff suggested that her back pain was related to her Crohn's disease, Dr. Humphries diagnosed her with chronic thoracic and lumbar pain of unknown etiology. (R. at 165.)

In light of these diagnoses, Dr. Humphries opined that the plaintiff was limited to "sitting, standing and walking six hours in a eight-hour workday and lifting fifty pounds occasionally and twenty-five pounds frequently . . . ." (R. at 166.) He did state, however, that he would defer to her attending physician regarding her lifting restrictions since that physician may wish to impose greater restrictions in light of her Crohn's disease. (*Id*.) Dr. Humphries further stated that the plaintiff had no

restrictions in her ability to climb, stoop, kneel, crouch, or crawl unless future tests revealed degenerative joint or degenerative disk disease. (*Id*.) If she was later diagnosed with these ailments, he opined that she would be able to stoop or crouch only occasionally. (*Id.*) Finally, Dr. Humphries identified no restrictions regarding heights, hazards or fumes. (*Id*.)

The plaintiff's files were then reviewed by Randall Hays, M.D., a state agency physician on October 27, 2005. (R. at 174-79.) Shirish Shahane, M.D., another state agency physician, also reviewed the plaintiff's records and signed the report on January 11, 2006. (R. at 178.) Dr. Hays found Dr. Humphries' report partially consistent but denied it great weight because it "reveals only a snapshot of the claimant's functioning and . . . underestimate[s] . . . the severity of the claimant's restrictions." (R. at 179.) Dr. Humphries concluded that the plaintiff could perform work at a medium exertional level. (*See* R. at 166.) *See* 20 C.F.R. § 416.967(c) (2007). In contrast, Dr. Hays opined that the plaintiff was restricted to light work. (*See* R. at 175.) *See* § 416.967(b). Specifically, he found that the plaintiff could lift only twenty pounds occasionally and up to ten pounds frequently, could stand and walk about six hours in a eight-hour workday, and was unlimited in her ability to push and pull. (*Id*.) He reported that she could only occasionally engage in postural functions but had no manipulative, visual, or communicative limitations. (R. at 176-

77.) Finally, the only environmental restriction identified by Dr. Hays was that the plaintiff could not work in a job that would expose her to hazards such as machinery or heights. (R. at 177.)

On January 19, 2006, the plaintiff was seen at the Mount Rogers Community Counseling Services after complaining of panic attacks. (R. at 258-65.) The counselor's report indicates that the plaintiff's affect was sad, anxious, and labile, but that her appearance, speech, and behavior were unremarkable. (R. at 259.) The plaintiff told the counselor that she was suffering from anxiety and depression due to recent deaths and illnesses in her family. (R. at 264.) She also reported that she had found a friend dead on the floor and kept reliving that memory. (R. at 260.) The plaintiff denied suicidal or homicidal ideation. (*Id.*) The counselor's notes indicate that the plaintiff found the Entocort she was taking for her Crohn's disease helpful with no side effects. (R. at 263.)

The counselor diagnosed the plaintiff with recurrent, severe major depression and an anxiety disorder without agoraphobia and recommended counseling. (R. at 264-65.) Despite these diagnoses, the counselor concluded that the plaintiff had no impairment in her abilities to manage money, take medication, access resources, practice self-care and hygiene, do laundry, and occasionally transport herself. (R. at 261.) The plaintiff's abilities with respect to preparing meals, housekeeping,

shopping, and exhibiting appropriate social skills were described as mildly impaired. (*Id.*)

Although the counselor recommended counseling after the initial visit, the plaintiff did not return to the counseling center until March 22, 2006. (R. at 257.) The notes from this visit indicate that the plaintiff was concerned about her brother who was going to prison. (*Id.*) She returned again on March 28, 2006, and stated that she now had insurance. ( R. at 256.)

The next day, the plaintiff underwent a colonoscopy and a polypectomy with Dr. Ringold at Carilion New River Valley Medical Center after complaining of increased abdominal pain and diarrhea. (R. at 266-79.) Dr. Ringold stated in his report that the plaintiff "has been maintained on Entocort with good results." (R. at 269.) He then recommended that she continue on this medication and stated that he would review the biopsies. (*Id.*)

The evidence in this case also consists of the plaintiff's testimony at the administrative hearing. (R. at 303-29.) During this hearing, she stated that she sought treatment at the counseling center only after her attorney suggested it. (R. at 322-23.) She further stated that she would not have thought to go on her own because she could not afford it. (*Id.*) The plaintiff also reported performing daily activities

such as cooking, light housework, and heavier chores such as laundry with the assistance of a friend. (R. at 326-27.)

A vocational expert also testified at this hearing. (R. at 329-39.) The ALJ asked the vocational expert to consider various hypothetical situations, including whether jobs existed in significant numbers for an individual the same age as the plaintiff, with her same education and background, who was restricted to light work activity. (R. at 333-34.) The ALJ described light work activity as lifting and carrying, including upward pulling, up to twenty pounds occasionally and ten pounds frequently; sitting, standing and walking with normal breaks for about six hours in a eight-hour day; and pulling and pushing without restriction. (*Id.*) He also asked the ALJ to assume that this person could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds or be exposed to hazards. (R. at 334.)

In response, the vocational expert testified that the plaintiff could perform her past work as well as the jobs of kitchen worker, laundry worker, and general office clerk. (R. at 334-35).

Case 1:07-cv-00011-JPJ-PMS   Document 14   Filed 01/25/08   Page 10 of 16   Pageid#: 392

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423 (d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing SSI claims. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2007). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard

-11-

Case 1:07-cv-00011-JPJ-PMS   Document 14   Filed 01/25/08   Page 11 of 16   Pageid#: 393

has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff's primary argument on appeal is that the ALJ's decision is not supported by substantial evidence. (Pl.'s Br. Supp. Mot. Summ. J. at 6-8.) She contends that she suffers from "severe exertional and nonexertional impairments, including Crohn's Disease, anemia, back pain, panic disorder, and depression," and that the ALJ erred in finding that she did not have an impairment that significantly limits her ability to perform basic work-related activities. (*Id.* at 6-7.)

In fact, the ALJ did find that the plaintiff's Crohn's disease was a severe impairment as the term "severe" is defined in the Regulations. (R. at 18.) However,

-12-

he observed that Dr. Ringold had indicated that the plaintiff's symptoms could be controlled with medication. (R. at 19.) The ALJ also noted that the colonoscopy performed by Dr. Ringold suggested only "mild" activity of her Crohn's disease. (*Id.*) He further looked to the plaintiff's self-reported activities of daily living and concluded that they "are not indicative of significant physical restriction." (*Id.*) In short, substantial evidence supported the ALJ's decision that the plaintiff's Crohn's disease, while "severe," did not limit her ability to perform light work.

The ALJ also found that the plaintiff's back and mental impairments were not severe. (R. at 18.) As to the back impairment, the lumbar spine X ray ordered by Dr. Humphries revealed "no arthritic changes in the lumbar spine . . . [to] account for the patient's symptoms." (R. at 168.) In fact, no treating or evaluating doctor supported the plaintiff's subjective pain allegations with positive clinical or diagnostic findings suggesting an anatomical or physiological abnormality. Dr. Ringold merely opined that while her back pain may be related to Crohn's disease, the pain was under control. (R. at 147.) Dr. Humphries wrote in his assessment that she suffered from chronic thoracic and lumbar pain of unknown etiology. (R. at 165.)

Furthermore, Dr. Humphries' examination yielded essentially normal results. (R. at 164-65.) He found that she had normal strength in all four extremities, full joint range of motion in the upper extremities and full joint range of motion in the

lower extremities with only "slightly reduced hip motion due to pain in the lumbar region." (R. at 164.)[1]

The ALJ also relied on the fact that neither Dr. Harris nor Dr. Ringold placed restrictions on the plaintiff that would prevent her from performing light work. (R. at 19.) In short, in light of the minimal findings from the X ray and examinations and the fact that the plaintiff has never been referred to an orthopedist for further treatment or evaluation, I find that the ALJ's conclusion that the plaintiff does not suffer from a severe back impairment is supported by substantial evidence.

I similarly find that the ALJ properly concluded that the plaintiff does not suffer from a severe mental impairment. While the plaintiff did receive counseling at the Mount Rogers Community Counseling Services, as the ALJ correctly observed, the plaintiff was seen on only three occasions. (R. at 18.) Although the plaintiff argues that she could not seek more treatment because she could not afford it, in her last counseling session, she stated that she had procured medical insurance. (R. at 256.)

---

[1] Dr. Humphries actually opined that the plaintiff was capable of performing medium level work. (*See* R. at 167.) *See* 20 C.F.R. § 416.967(c) (2007). However, the reviewing agency physicians limited the plaintiff to light work. (*See* R. at 175.) *See* § 416.967(b). The ALJ accepted the conclusion of these state agency physicians over that of Dr. Humphries and limited her to light work. (R. at 19.)

-14-

Furthermore, she testified at the administrative hearing that she sought mental health treatment only after being advised to do so by her counsel, and the records reflect that her second visit was precipitated by concerns about her brother going to prison. (R. at 18, 257, 322-23.) While the intake therapist recommended counseling, the therapist opined that the plaintiff's impairment only mildly affected her functional capacity. (R. at 261, 265.) In fact, the therapist found that the plaintiff was not restricted at all in her ability to perform many activities of daily living. (R. at 261.) There is also no indication that the plaintiff has taken medication for her mental impairment. (*See* R. at 119.) Because the record is devoid of evidence suggesting that the plaintiff's mental impairment restricts her ability to perform light work, I find that the ALJ committed no error in his analysis of the plaintiff's mental impairment.

Finally, the plaintiff argues that the ALJ erred because he did not consider the cumulative effect of her impairments. (Pl.'s Br. Supp. Mot. Summ. J. at 8.) While the ALJ may have described the evidence as to each impairment separately, his decision indicates that he considered all of the plaintiff's mental and physical limitations together before determining that the plaintiff maintained the residual functional capacity to perform light work that would not involve exposure to hazards.

-15-

(R. at 18-19.) I therefore find no error in the ALJ's decision that the plaintiff is not disabled within the meaning of the Act.[2]

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: January 25, 2008

/s/ JAMES P. JONES
Chief United States District Judge

---

[2] The plaintiff also argues that the ALJ erred by relying on the fact that she did not seek treatment that she claims she could not afford. (Pl.'s Br. Supp. Mot. Summ. J. at 8.) In support of this argument, the plaintiff relies on two Fourth Circuit cases, *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), and *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984). However, I need not address the merits of this argument, as I find that any error in this regard would be harmless. While the ALJ did note in his decision that the plaintiff sought treatment for her mental health impairment and Crohn's disease on only a few occasions, substantial other evidence supported the ALJ's decision that these impairments did not prevent the plaintiff from performing light work.